ADA LEONARD, appellant,

*v.*

WILLIAM N. DONOVAN, respondent.

[Decided June 18th, 1923.]

On appeal from a decree of the court of chancery.

*Messrs. Howe & Davis,* for the appellant.

*Mr. James R. Stewart, Jr.,* for the respondent.

PER CURIAM.

The bill in this case was filed by Lillian Leslie Donovan, the wife of the defendant, to have decreed to be null and void a conveyance of property made by her to the defendant in August, 1920. At the time the bill was filed, in June, 1921, Mrs. Donovan was an inmate of the insane asylum at Overbrook, where she had been confined since the preceding March. The suit was instituted by her sister, Ada, as next friend. The charge in the bill was that at the time of making the conveyance Mrs. Donovan, who was then a Miss Leonard, was insane and without mental capacity to make a conveyance. The bill contained a further averment that, even if such mental capacity existed, yet the complainant's mind had been enfeebled by disease, and that the defendant took advantage of that fact, and persuaded her, by undue influence exercised by him, to execute the conveyance without any consideration passing from him to her. The defendant denied all the charges contained in the bill, asserting that the conveyance was made by Miss Leonard of her own free will; that it was not a gift of the property described in it from her to him, but was made in consideration of his promise to take care of her for the rest of her life. Mrs. Donovan died *pendente lite,* and her sister, the present appellant, was substituted in her place as complainant. The hearing resulted in a dismissal of the bill.

We think the decree under review should be affirmed. The proofs disclosed the following situation. Mrs. Donovan, the original complainant, and the defendant were second cousins, and he was a boarder in her home for many years prior to the execution of the conveyance now in controversy. There is no doubt that their relations during all that time were friendly and close. In September, 1919, when she was about fifty years old, she had an apoplectic stroke, which left her completely paralyzed on one side, so that she was never able to help herself afterward without assistance; in other words, she was practically bedridden. The defendant continued to live in her home after this seizure, acting not only as her

friend, but really as her nurse, and this continued from the time of her stroke until August, 1920, when the conveyance was made. Counsel who prepared the deed was instructed by Donovan, the defendant, to prepare an agreement also, binding him (Donovan) to support her during the rest of her life. The instructions with relation to the preparation of the deed, and also of the agreement, were given to counsel in the presence of Miss Leonard, and the agreement was executed by the defendant immediately after she executed the deed. Some three or four weeks thereafter, there having been some criticism in her family about his acting as her nurse, he married her, and continued to take care of her until the following March, when, because of her insanity, she was taken to the asylum at Overbrook; and presumably, as her husband, he continued to support her thereafter until her death.

We find nothing in the proofs to justify the averment of the bill that at the time of the making of the deed of conveyance the grantor was mentally incapable of transferring her property. The mere fact that she was insane some seven months later, standing alone, will not support the complainant's charge of pre-existing mental incapacity, and the weight of the expert testimony was to the contrary.

Nor does the testimony support the conclusion that this conveyance was a gift of the property described in it rather than the passing of the title thereto for an adequate consideration. The burden of proving this fact by a preponderance of evidence rested upon the complainant, and she has not borne that burden. On the contrary, the evidence upon this phase of the case indicates that it was not. The only ground, therefore, upon which a court would be justified in declaring it to be invalid would be upon evidence showing that it was the result of a fraud perpetrated upon the grantor by the grantee, and there is nothing in the facts before us which suggests anything of the kind.

We conclude, therefore, that the decree under review should be affirmed.

*For affirmance* — THE CHIEF JUSTICE, TRENCHARD, PARKER, BERGEN, KALISCH, BLACK, KATZENBACH, WHITE, HEPPENHEIMER, ACKERSON, VAN BUSKIRK—11.

*For reversal*—None.